OPINION OF THE COURT
Allen Murray Myers, J.
The decision signed on April 17, 1980 is recalled, vacated and replaced by the decision herein.
The defendant Hucktrol has moved for summary judgment dismissing the complaint against it. The complaint alleges three causes of action against Hucktrol, i.e., a fourth cause of action in negligence, a ñfth based on strict products liability, and a sixth for breach of warranty. The other causes of action do not concern Hucktrol.
This motion is based upon three grounds: (1) the causes of action are barred by the Statutes of Limitation of the Province of Quebec, Canada, and of the State of New York; (2) the causes of action are barred by the substantive civil law of Quebec; and (3) in the alternative, under New York Law, (a) granting partial summary judgment as to the cause of action based on strict products liability and (b) disallowing a demand for consequential damages on all of the causes of action.
The applicable Statute of Limitations is a question of law of which a court must take judicial notice. (CPLR 4511, subd [a].)
FACTS
This lawsuit is based upon a claim by plaintiffs that a crash of a CL-44 aircraft at Dacca, Bangladesh, on December 2, 1970 was caused by the in-flight application of a gust lock hydraulic system which it is alleged had the effect of locking the flight controls. It is further alleged that a hydraulic selector valve manufactured by Hucktrol (under its former name, Electrol), which was a component part of this system, had malfunctioned.
The hydraulic selector valve was defendant Canadair’s part number 28-75014, serial number 116. It was manufactured and sold by Hucktrol to a firm called Railway and Power Engineering Corporation, Ltd., in Montreal, Canada (pursuant to the latter’s purchase order) and shipped directly to defendant Canadair, Ltd., in Canada on November 14, 1961. The price of the valve was $298.71.
The valve was manufactured by Hucktrol pursuant to specifications supplied by defendant Canadair, initially, in Decern *242 ber, 1954; and pursuant to Canadair requirements, a model valve made by Hucktrol underwent a qualification test in June, 1956, the results of which were accepted and approved by Canadair on July 5, 1956.
The valve was manufactured by Hucktrol in accordance with Canadair specification control drawing 28-75014, revision E and was one of hundreds of components in a control surface lock hydraulic system designed by Canadair. Hucktrol was not involved in the design, manufacture, assembly or testing of the control system.
The valve was manufactured and delivered in 1961 and installed in another of plaintiffs’ aircraft in 1968.
The valve was removed from that aircraft by plaintiffs in January, 1969, overhauled by defendant Central Aviation and Marine Corporation in February, 1969, and installed in November, 1970 in the aircraft which crashed on December 2, 1970.
No privity between the plaintiffs and Hucktrol is alleged.
The valve which was manufactured by Hucktrol pursuant to a written purchase order of Railway and Power Engineering Corporation, Limited of Montreal, Canada, dated July 13, 1961, contained the following express warranty clause: "The vendor warrants the goods against defects in materials and workmanship to the extent that such design has not been supplied by the purchaser. This warranty shall apply to Canadair Limited and to its customers.”
Canadair, the manufacturer of the aircraft, sold it pursuant to a written agreement to plaintiff Icelandic (Loftleidir) on February 15, 1964 for $5,572,323 and delivered it in Canada on February 25, 1964. At the time of the sale, the aircraft had been certified as airworthy by the Canadian Department of Transport. The sales agreement, in article 27, provided that the rights and liabilities of the parties were to be governed by the laws of Quebec, Canada; and by article 10 (c) and (e), Canadair’s warranty liabilities were limited to claims made within six months after delivery.
The plaintiff Salenia purchased an interest in the aircraft by agreement dated August 15, 1970 for $1,000,000. By the terms of that agreement and the letter agreement of August 15, 1970, Salenia accepted the aircraft in an "as is” condition without any warranties and subject to the limitations in the agreement between Loftleidir and Canadair.
*243 At the time of the crash, on December 2, 1970, the aircraft was registered in the names of Canadair and plaintiff Salenia with the Civil Aviation Administration of Iceland.
The complaint in this action seeks damages of $4,600,000 for the destruction of the plane, loss of profits, loss of use, loss of equipment on the plane, and the cost of the investigation of the crash.
SUBSTANTIVE LAW
The substantive law to be applied in this case is that of the Province of Quebec, Canada. Under the "grouping of interests” test enunciated by the Court of Appeals in Martin v Dierck Equip. Co. (52 AD2d 463, affd 43 NY2d 583), all directional signals point to Canada. The specifications for the valve were made in Canada and upon manufacture, was shipped to that locality where it was placed into the aircraft and delivered to plaintiff Loftleidir. Also, article 27 of the purchase agreement between Canadair and Loftleidir states that the agreement will be governed by the laws of Quebec. The only contact which New York had to the valve was that it was manufactured in and shipped from the State of New York. As stated in Martin, "the nonresident’s 'contact’ with New York and its law, limited to the fact that the vehicle was manufactured in the State, is at best fortuitous and tangential”. (52 AD2d 463, 467.) The law of Bangladesh, the site of the plane crash, is not applicable since "in airplane crash cases, the place of the wrong * * * is most often fortuitous”. (Cousins v Instrument Flyers, 44 NY2d 698, 699.) In addition, Bangladesh has very little interest in the present litigation since the plane was manufactured and purchased in Canada and owned by an Icelandic and a Swedish corporation. The plane was principally hangared and serviced in Luxembourg.
Having determined the substantive law to be applied in this case to be that of Quebec, Canada, it will be shown that plaintiffs’ causes of action in negligence, strict products liability and breach of warranty must be dismissed and summary judgment granted to defendant on all of these actions.
THE LAW REGARDING THE STATUTE OF LIMITATIONS

I. Negligence

In New York, CPLR 214 (subd 4) provides that an action to recover damages for an injury to property must be commenced *244 within three years. This period of limitation, in a negligence action without fraud, ordinarily runs from the time of the commission of the wrong or injury. (Hillel v Motor Haulage Co., 102 NYS2d 578, citing Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 300.) Plaintiffs originally commenced suit against the defendants in the United States District Court for the Southern District of New York on November 30, 1973. That action was dismissed for lack of subject matter jurisdiction. Plaintiffs then instituted the instant action in the New York Supreme Court on March 10, 1975, within the six-month period provided for in CPLR 205 (subd [a]), which provides for a new action to be commenced upon the same cause of action. Thus, for Statute of Limitation purposes, plaintiff’s action in the State Supreme Court is deemed to have been commenced on November 30, 1973. Since the crash occurred on December 2, 1970, the New York State action is within the three-year Statute of Limitations.
But CPLR 202 provides that when an action is based upon a cause of action accruing without the State, the foreign Statute of Limitations shall apply, if it bars the action. Therefore, this court will apply the Statute of Limitations of Quebec.
Under article 2261 of the Civil Code of Quebec (CC) an action "for damages resulting from offenses or quasi-offenses,” (intentional or unintentional negligence) must be commenced within two years. Also, section 1053 of CC provides that, "Every person capable of discerning right from wrong is responsible for the damage caused by his fault to another, whether by positive act, imprudence, neglect or want of skill.” The prescription period of two years is part of the substantive law of Quebec. After those two years, which commence to run from the date the negligence occurred, from the date that the damage occurred, or at the latest, from the date that the damage and its cause were known to plaintiffs, the cause of action is absolutely extinguished and no action may be maintained (CC, art 2267). Since it has been more than two years since the date that the damage and its cause were known to plaintiffs, the two-year prescription period of Quebec has elapsed. Accordingly, plaintiffs’ negligence cause of action is extinguished.

II. Strict Products Liability

In New York, in order to maintain an action under the theory of strict products liability, one must show that there was a defect in the product at the time that it left the *245 defendant’s hands, Jerry v Borden Co. (45 AD2d 344); that the defect was a substantial factor in bringing about the damage or injury; that the product was used for the purpose and in the manner normally intended by any person; and that if the person injured or damaged is the user, he would not, by the exercise of reasonable care, have discovered the defect and perceived its danger. There is no requirement of privity between the parties. (Codling v Paglia, 32 NY2d 330.)
It is asserted by defendant that a cause of action in strict products liability is substantively barred by the law of New York on two grounds. It will, however, be demonstrated that this assertion is unfounded. First, defendant claims such an action is not maintainable against a component part manufacturer (Goldberg v Kollsman Instrument Corp., 12 NY2d 432). However, in the case of Clark v Bendix Corp. (42 AD2d 727), the court held that actions in breach of implied warranty and negligence could be instituted against the manufacturer of a component part, i.e., the manufacturer of a faulty steering apparatus in an automobile. While couched in terms of an action based upon a warranty theory, the cause of action in Clark appears to have been, in reality, an action in strict products liability. In reaching its decision, the court relied upon the fact noted in Codling v Paglia (supra) that an average consumer is not equipped to comprehend how or why a particular component operates. In Martin v Dierck Equip. Co. (52 AD2d 463, affd 43 NY2d 583, supra) the Court of Appeals held that a cause of action denominated as a breach of warranty which was brought by a party injured by the malfunction of a forklift truck against the manufacturer of the truck was actually an action in strict products liability because such an action seeks to provide a remedy for damage caused by another’s violation of law. This is in contrast to a cause of action for breach of warranty which is a contractual remedy in that it seeks to provide the parties with the benefit of their bargain and is based upon some agreement. (See Martin v Dierck Equip Co., supra, pp 589-590.) By conjunctively applying the Clark and Martin cases, it may then be inferred that a cause of action in strict products liability may be asserted against the manufacturer of a component part.
In addition, defendant claims that a cause of action in strict products liability may not be brought where the parties involved are large corporations which have the capability of protecting themselves, contractually or otherwise. It is stated *246 by defendant that the imposition of strict products liability was intended to protect the unsophisticated consumer, who cannot otherwise protect himself, by shifting the cost of his injuries to the manufacturer, citing Codling v Paglia (supra) and Clark v Bendix (supra), The defendant argues, therefore, that since both it and the plaintiff are large corporations, dealing in the aviation field, plaintiff was not in the position of the average consumer. This argument is not persuasive since the Codling court stated that if specific conditions were met, the manufacturer of a defective product would be liable to any person damaged. (Cf. Potsdam Welding & Mach. Co. v Neptune Microfloc, 57 AD2d 993.) No distinction has, as yet, been made between ordinary consumers and "commercial specialists” by the Court of Appeals.
In order to decide whether defendant should be granted summary judgment as to this cause of action, it must be determined whether or not there are any triable issues of fact. (CPLR 3212.) The valve manufactured by defendant was designed and underwent testing under the supervision of Canadair, the manufacturer of the aircraft. Defendant’s liability was expressly limited to defects in materials or workmanship and was to apply to Canadair and its customers. Therefore, under this provision, plaintiff Loftleidir "stepped into the shoes” of Canadair when it purchased the aircraft. Plaintiff Salenia purchased an interest in the aircraft, whereby it accepted it "as is”, without any warranties. Since defendant made no warranty, implied or express, that the product would function properly, the malfunctioning of the valve is not a defect for which the plaintiffs may recover under a strict products liability theory. There being no defect on which an action may be based, defendant’s motion for partial summary judgment would be granted under New York law and the cause of action dismissed. (In a case similar to the one at bar, S. A. Empresa de Viacao Aerea Rio Grandense [Varig Airlines] v Boeing Co., Case No. CV-75-2324-WPG [US Dist Ct, CD Cal, 1979], the court there held that if a strict liability action against the manufacturer of the integrated product has been dismissed, the same action against the component manufacturer must be dismissed where the component manufacturer made the part according to specifications supplied by the manufacturer of the integrated part. This reasoning, although used in a foreign jurisdiction, is compatible with the law of New York and should be adopted.) The cause of action against Canadair has been previously dismissed by this court.
*247 Assuming, however, that the plaintiffs were allowed to bring their case to trial, the plaintiffs’ cause of action would not be time barred under the law of New York. An action in strict products liability must be brought within three years of the date of injury. (CPLR 214, subd 4; Victorson v Bock Laundry Mach. Co., 37 NY2d 395; 1 Weinstein-Korn-Miller, NY Civ Prac, par 214.13.) The plaintiffs’ service of the summons commencing this action is deemed to have been made on November 30, 1973 under CPLR 205 (subd [a]), as discussed above, within three years of the date of the accident. However, substantive law to be applied in this case is that of the Province of Quebec, Canada, in accordance with the grouping of interests test of Martin v Dierck Equip. Co. (43 NY2d 583, supra). On the basis of the affidavit submitted by the defendant, it appears that Quebec does not recognize an action based upon strict products liability. This allegation is not contested by the plaintiffs and, therefore, this court accepts it as representing the true state of the law in Quebec. Accordingly, defendant’s motion for summary judgment in this regard is granted and this cause of action is dismissed.

III. Breach of Warranty

 The plaintiffs next assert a cause of action for breach of warranty. However, "[w]here a definite article is made by the seller for the buyer according to specifications, there is no implied warranty of marketability. Stroock Plush Co. v Talcott, 134 N.Y.S. 1052, 150 App. Div. 343” (77 CJS, Sales, § 327, subd a, p 1184, col 2). In this case, not only did the buyer provide the specifications, it supervised the tests conducted upon the valve. In addition, defendant Hocktrol limited its warranties in the buyer’s purchase order: "The vendor warrants the goods against defects in materials and workmanship to the extent that such design has not been supplied by the purchaser. This warranty shall apply to Canadair Limited and to its customers.”
Accordingly, Loftleidir "stepped into the shoes” of Canadair when it purchased the airplane subject to this limited warranty. Salenia purchased its interest in the aircraft "as is” and, therefore, may not also claim that there had been a breach of implied warranty.
Assuming that implied warranties had been made, plaintiffs’ cause of action for breach of warranty would be barred in New York. The aircraft was sold on September 25, 1964 and *248 the valve was sold in 1961. In New York, the Statute of Limitations governing contractual obligations was six years after the dates of sale. (CPLR 213, subd 2.) After September 27, 1964, New York’s breach of warranty Statute of Limitations was reduced to four years from the date of sale. (Uniform Commercial Code, § 2-725.) Since more than six years have elapsed from the date of sale to the date of service of summons (March 1975 or November 1973), this action would be dismissed.
In the governing jurisdiction, Quebec, article 1530 of the Civil Code requires that an "action resulting from the obligation of warranty against latent defects, must be brought with reasonable diligence, according to the nature of the defect and the usage of the place where the sale is made.” Giving the plaintiffs the benefit of every presumption, it is the opinion of this court that the Quebec law is not less restrictive than the New York statutes of four or six years from the date of sale. This opinion is supported by the opinion of Hucktrol’s expert, William S. Tyndale, Q. C., and has not been refuted by plaintiffs. Having not been brought with "reasonable diligence”, this cause of action is dismissed.
The plaintiffs’ argument in support of its sixth cause of action for breach of warranty is that it is an action for fraudulent misrepresentation and is, therefore, not barred by the Quebec Statute of Limitations. However, there is no evidence that defendant Hucktrol made any misrepresentations to the plaintiffs. Also, the language constituting this cause of action clearly indicates that it is not based on fraud.
Therefore, this cause of action is dismissed.
The plaintiffs’ request for consequential damages is denied on the ground that plaintiffs have no basis for holding defendant liable on any of the causes of action asserted.