Jeanne HARRISON and Wayne
Harrison, Plaintiff,

v.

NORTHWEST ORIENT AIRLINES,
INC., Defendant.

No. 85 Civ. 1869 (CSH).

United States District Court,
S.D. New York.

Oct. 26, 1987.

Greenblatt & Axelrod, P.C., Newburgh, N.Y., for plaintiff, James W. Winslow, of counsel.

Bigham Englar Jones & Houston, New York City, for defendant, Robert E. Hirsch, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Jeanne Harrison sues defendant Northwest Orient Airlines, Inc. ("Northwest") to recover for personal injuries allegedly suffered while she was a passenger on a Northwest flight from San Diego, California to Seattle, Washington on March 11, 1983. Plaintiff Wayne Harrison, her husband, claims damages deriving from that injury.

After complete discovery and the entry of a joint pre-trial order, Northwest moves under Rule 56(b), F.R.Civ.P., for summary judgment dismissing the complaint. North-

west asserts that the complaint is barred by the applicable statute of limitations; and that, in the alternative, it is entitled to judgment on the merits.

Because I accept both these contentions, the complaint will be dismissed with prejudice.

## I.

Subject matter jurisdiction in this Court is founded upon diversity of citizenship. Plaintiffs are Connecticut residents. Northwest is a Minnesota corporation with its principal place of business in that state.

Plaintiff Jeanne Harrison booked passage on a Northwest flight from San Diego, California to Seattle, Washington on March 11, 1983. The flight made a scheduled stop en route at Los Angeles. After take off from Los Angeles, the cabin attendants served the passengers a meal described as "brunch" consisting of a cold bagel and cream cheese with coffee or tea. The case for plaintiffs is that after she finished her meal, Mrs. Harrison walked forward in the single center aisle to the lavatory. She reached the lavatory without incident, but alleges that upon returning, she tripped over a luggage strap protruding from underneath an aisle seat into the aisle. The theory of negligence pleaded in the complaint, ¶ 10, is that defendant was negligent "in permitting obstructions to remain in the aisle" of the plane. That theory is repeated in the pretrial order. ¶ (b)(2).

Plaintiffs filed their complaint in this Court on March 8, 1985. Northwest contends that the action is barred by the statute of limitations.

Because federal jurisdiction derives from diversity of citizenship, this Court looks to New York limitations law. *Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir.1981). Plaintiffs do not reside in New York. Accordingly the New York "borrowing statute", N.Y.C.P.L.R. § 202, comes into play. The statute provides:

"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

The New York Court of Appeals has identified the "primary purpose" of section 202 as the prevention of "forum shopping by a nonresident seeking to take advantage of a more favorable statute of limitations in New York." *Antone v. General Motors Corp.*, 64 N.Y.2d 20, 27–28, 484 N.Y.S.2d 514, 473 N.E.2d 742 (1984). *See also Sack v. Low*, 478 F.2d 360, 367 (2d Cir.1973). Judge Weinstein has analogized the New York borrowing statute to conflict of laws rules "that on matters of 'substance', apply the law of the foreign state having appropriate contacts with the transactions rather than the law of the forum in order to achieve uniformity, avoid forum shopping, and lessen court congestion." *In re Agent Orange Product Liability Litigation*, 597 F.Supp 740, 801 (E.D.N.Y.1984).

In the case at bar, the parties agree that the following statutes of limitations apply in the following states: New York, three years; California, one year; Connecticut, two years; Oregon, two years; and Minnesota, two years.

Northwest argues for application of the California one-year statute as that being the state where plaintiffs' cause of action accrued. In support of that assertion, Northwest contends that Mrs. Harrison, having boarded the flight in California, suffered her injury while the flight was still flying over California.

Plaintiffs challenge the assertion of where the accident occurred. But Northwest has established that the flight was over California when Mrs. Harrison tripped in the aisle. The accident occurred on the Los Angeles to Seattle leg of the flight. Computerized flight plans demonstrate that the typical total flight time for this leg is approximately 116 minutes, of which 64% or 75 minutes would be over California. Affidavit of Robert G. Lane, Northwest flight dispatcher. While the stewardesses

serving the flight in question could not remember the events with particularity, the deposition testimony is clear that "brunch" is as a matter of course served immediately upon reaching cruising altitude after departure from Los Angeles. It takes between fifteen to twenty-five minutes to reach cruising altitude. The service and clearance of this modest repast is "very short." Deposition of Rosalie Lindberg at 46–47. Evidence of an organization's routine practice is relevant to prove that the organization's conduct on a particular occasion was in conformity with the practice. Rule 406, F.R.Evid. Mrs. Harrison's recollections are understandably imprecise. I am satisfied by the evidence adduced during pre-trial discovery, supplemented by affidavit, that the accident occurred before the flight left California airspace to cross Oregon on its way to Washington.[1]

As a general proposition, the New York Courts have abandoned traditional *lex loci delicti* concepts in favor of a "grouping of contacts" test which analyzes the interests of the states involved in seeing their law applied. *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). In airplane casualty cases, the "purely adventitious circumstances" that an accident occurred over a particular state has not controlled the New York courts' choice of substantive law. *Long v. Pan American World Airways, Inc.*, 16 N.Y.2d 337, 342, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965). Other courts and commentators have applied that principle in a section 202 analysis where the air plane crashes in a state other than that of the contracted for origin or destination.[2]

By way of contrast, the Second Circuit has repeatedly construed New York law as to apply traditional *lex loci* concepts of cause of action accrual when the borrowing statute is implicated. *Stafford v. International Harvester Co., supra; Arneil v. Ramsey*, 550 F.2d 774 (2d Cir.1977); *Sack v. Low, supra.*[3]

---

1. Plaintiffs argue for a longer brunch period (which would bring the post-brunch accident further away from Los Angeles and closer to the Oregon border) by pointing to a Northwest manual, which provides for the times at which "meals are normally scheduled for service." The entry for "brunch" is "0900–0945." It hardly follows that the service and clean-up of brunch actually consumes 45 minutes. The manual does no more than provide a time frame within which the specified meals are normally served to passengers. Thus the normal time frame for service of "dinner" is "1630–1930." I would not draw from that entry the inference that the service of dinner on board a Northwest flight normally consumes three hours. Indeed, I may judicially notice the fact that passengers do not linger over airline food. Rule 201(b), F.R.Evid.

2. *See Gegan, Conflicts—Place of Accrual*, 47 St. John's L.R.Evd. 62 at 74 (1974); *Icelandic Airlines, Inc. (Loftleider) v. Canadair, Ltd.*, 104 Misc.2d 239, 428 N.Y.S.2d 393 (S.Ct.N.Y.Cty. 1980); *Loftleider v. Canadair, Ltd.*, 15 CCH Aviation cases 18,038 (S.C.N.Y.Cty.). The two cited trial court cases have to do with allegedly defected airplanes or airplane parts sold, manufactured or supplied in Canada, with accidents fortuitously occurring in Bangladesh and New York. The trial courts applied the "grouping of interests" test in their borrowing statute analysis, and looked to the law of Canada, under which the respective plaintiffs' claims were timed barred.

3. Writing in 1981, the Second Circuit concluded in *Stafford* that the New York cases:

"... have not squarely addressed the problem of whether a 'place of injury' or a 'grouping of contacts' approach should be applied to determine where a cause of action accrues for purposes of the borrowing statute." 668 F.2d at 149.

The Court of Appeals approved the District Court's conclusion that:

"... since the New York intermediate courts were divided on the question and the New York Court of Appeals had avoided ruling on it when directly presented with an opportunity, it was most appropriate for a federal court applying New York law in its diversity jurisdiction to take a conservative position and apply the traditional place of injury test." *Ibid.*

The case arose out of the sudden failure in Pennsylvania of the steering mechanism of an International Harvester truck, resulting in the inquiries complained of. Plaintiffs brought a diversity action in New York. The suit was timely under New York's three-year statute, but barred by the Pennsylvania two-year statute. The Second Circuit applied the New York borrowing statute to bar the claim. "In so holding we follow the general rule, recognized in *Arneil v. Ramsey*, that the place of injury determines where the cause of action accrues." *Id.* at 154. The Second Circuit does not appear to have addressed the issue since *Stafford*, and this Court currently follows its *lex loci* rule in borrowing statute analysis. *See, e.g., Korwek v.*

■ In the case at bar I need not choose between *lex loci* and grouping of contacts concepts for the purpose of cause of action accrual in this borrowing statute analysis. By either test, plaintiffs' cause of action accrued in California.

This is not a case where passengers contracted with a carrier to fly from a state of origin to a state of destination, with the accident occurring fortuitously over the territory of an intervening state. Mrs. Harrison contracted with Northwest to fly her from California to Washington. The accident occurred while the flight was still in California airspace. That latter circumstance is determinative under the *lex loci* test. Under the grouping of contacts test, no other state has a comparable interest. The public policy underlying the borrowing statute gives an added impetus for application of the shorter California statute.[4] Plaintiffs' action is time barred.

## II.

■ As noted *supra,* plaintiffs' theory of fault has always been negligence on the part of the cabin attendants in failing to detect and remove the obstruction over which Mrs. Harrison allegedly fell.

This is the theory pleaded in the complaint and reiterated in the pre-trial order executed upon completion of discovery. No other theory was suggested in those documents.

*Hunt,* 646 F.Supp. 953, 967–68 (S.D.N.Y.1986) (Lasker, Jr.); *Appel v. Kidder, Peabody & Co., Inc.,* 628 F.Supp. 153, 155–56 (S.D.N.Y.1986) (Weinfeld, J.) The failure of a steering mechanism in a particular state is as fortuitous as an aircraft casualty occurring over or on a particular state.

4. Plaintiffs at bar disclaim forum-shopping as a motivation for suing in this district. In aid of that disclaimer, they submit the affidavit of Charles Moore, Esq., a Connecticut attorney, who says that plaintiffs instructed him "on or about *March 3,* 1983" to pursue an action against Northwest for plaintiff Jeanne Harrison's injuries. Affidavit at ¶ 2(b) (emphasis added). Mr. Moore continues that he concluded after investigation that Northwest could not be served in Connecticut but was amenable to service in New York, whereupon he referred the case to plaintiffs' present counsel.

Mr. Moore's affidavit is not entirely enlightening, since the complaint alleges (and it is appar-

To succeed on such a theory plaintiffs must prove actual or constructive notice to defendant's employees of the hazard. Mrs. Harrison and the cabin attendants have been deposed at length. There is no reason to believe that trial would further develop the pertinent facts. There is no evidence whatsoever of actual notice. There is an equal paucity of proof of those facts necessary to constitute constructive notice, as articulated in cases such as *Negri v. Stop & Shop,* 65 N.Y.2d 625, 626, 491 N.Y.S.2d 151, 480 N.E.2d 740 (1985) ("To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.")

■ In resisting this branch of Northwest's motion, plaintiffs' counsel advances for the first time a theory of negligent design of the aisle seats on the aircraft. The theory is that the aisle seats should have been furnished with protective skirting to prevent straps of luggage stored under the seats from protruding into the aisle. There is not, and never has been, any proffer of qualified expert opinion testimony that the aircraft's design was inherently hazardous. The unsupported conclusions of counsel will not suffice to resist a properly supported motion for summary judgment under Rule 56. *See particularly* Rule 56(e).

ently undisputed) that the incident in suit occurred on *March 11,* 1983, eight days after Mr. Moore says he received his first instructions from plaintiffs. I suspect that Mr. Moore received those instructions on March 3, *1985,* researched the question of Connecticut personal jurisdiction, and thereafter referred the case to New York counsel, who filed the complaint in this Court on March 8, 1985. Mr. Moore does not state one way or the other whether he considered California as a possible jurisdiction, but rejected it because of its one year statute of limitations. Accepting for this discussion that he did not, we may not be presented with a classic, undiluted case of forum-shopping to take advantage of a more lenient New York statute of limitations. But New York has no interest whatsoever in this litigation or its litigants; and Northwest is entitled to avail itself of the borrowing statutes' machinery.

In any event, this theory of liability, suggested for the first time after joinder of issue on the pleadings, full discovery, and the entry of a pre-trial order, comes too late. If plaintiffs had attempted to introduce proof of this theory at trial, I would have rejected the offer as foreclosed by the pleadings, discovery, and subsequent definition of the issues in the pre-trial order, that being an important function of the order. I will not consider the suggestion now, in its role of a transparent effort to defeat that summary judgment to which the record developed on discovery entitles the defendant.

### Conclusions

The Clerk of the Court is directed to dismiss the complaint with prejudice and with costs.

It is SO ORDERED.