Andre St. PIERRE and Que–Van
Transport, Inc., Plaintiffs,

v.

Luke R. DYER, Defendant
and Cross–Defendant;

Coburn Insuring Agency, Inc., Defendant,
Cross–Defendant and Counter–
Defendant; and

Agents Service Corporation, Defendant
and Cross–Claimant;

Luke R. DYER, Third–Party Plaintiff,

v.

AMERICAN IRON AND METAL, INC.,
Third–Party Defendant, Counter–Defendant and Cross–Defendant; and

Connecticut Indemnity, Third–Party
Defendant, Counter–Defendant
and Cross–Claimant.

No. 96–CV–1616.

United States District Court,
N.D. New York.

Sept. 25, 1998.

MacKrell, Rowlands, Premo & Pierro, P.C., Albany, NY, for Plaintiffs; Paul A. Levine, of counsel.

Thuillez, Ford, Gold & Johnson LLP, Albany, NY, for Defendant, Cross–Defendant and Third–Party Plaintiff Luke R. Dyer; Donald P. Ford, Jr., of counsel.

Ainsworth, Sullivan, Tracy, Knauf, Warner & Ruslander, Albany, NY, for Defendant, Cross–Defendant and Counter–Defendant Coburn Insuring Agency; Colleen M. O'Connell, of counsel.

Fernandez, Burstein & Tuczinski, P.C., Albany, NY, for Defendant and Cross–Claimant Agents Service Corporation, Richard L. Burstein, of counsel.

MacKenzie, Smith, Lewis, Mitchell & Hughes, LLP, Syracuse, NY, for Third–Party Defendant, Counter–Claimant and Cross–Claimant Connecticut Indemnity; David M. Garber, of counsel.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Presently pending are the motions of defendants Luke R. Dyer ("Dyer"), Coburn Insuring Agency, Inc. ("Coburn") and Agents Service Corporation ("ASERCO") for summary judgment pursuant to Fed.R.Civ.P. 56. Docket Nos. 25, 27 & 30. Also pending is a motion for summary judgment by Connecticut Indemnity on both the direct and third-party claims. Docket No. 47. For the reasons which follow, each motion is granted.

### I. Background

Viewed in the light most favorable to the plaintiffs, the facts presented on these motions are as follows.

#### A. The Insurance Contract

On July 21, 1987, plaintiff Andre St. Pierre ("St. Pierre") signed an agreement with Kenworth Metropolitan ("Kenworth")[1] to lease a new tractor and trailer.[2] The total lease payments were $169,000 to be paid in fifty-four monthly installments of $2,994.30 beginning on September 1, 1987. The lease contained an option to buy. Among other things the lease also required St. Pierre to (1) maintain theft insurance for the sole benefit of Kenworth, and (2) require due notice to Kenworth prior to cancellation of this insurance. Ford Aff. (Docket No. 25), Ex. I.

On August 4, 1987, St. Pierre met with Dyer. Dyer assisted St. Pierre in completing applications for the required insurance coverage for the tractor and trailer. Dyer

---

1. Kenworth was succeeded in interest by third-party defendant American Iron and Metal, Inc. Ford Aff. (Docket No. 25), ¶ 4.

2. On September 28, 1987, plaintiff Que–Van, Inc. was incorporated. On October 7, 1987, St. Pierre asked Coburn to add Que–Van to the insurance policies as an additional insured. Joan St. Pierre Aff. (Docket No. 31), ¶¶ 8 & 9.

advised St. Pierre that the total cost for the insurance would be $15,401.00. Financing for the cost of the insurance was arranged for St. Pierre by Dyer through ASERCO. Joan St. Pierre Aff. (Docket No. 31), ¶ 5. Under the financing agreement, St. Pierre was obligated to pay ASERCO $1,298.22 in nine monthly installments commencing on August 25, 1987. Compl. (Docket No. 1), ¶ 24. Dyer placed the theft and other coverage for the tractor and trailer with Connecticut Indemnity with coverage effective August 5, 1987 through August 5, 1988. Joan St. Pierre Aff. at ¶ 7. The Connecticut Indemnity policy named St. Pierre as the insured and Kenworth as the loss payee. The maximum payment required under the policy for loss was $76,500. The policy required that notice of cancellation of the policy be provided to Kenworth. Ford Aff. at ¶ 18 and Exs. G & H.

St. Pierre failed to make the payment to ASERCO due November 25, 1987. On December 10, 1987, ASERCO mailed notices to St. Pierre and Que–Van that the policy would be canceled if payment was not received. The notices were mailed to both St. Pierre and Que–Van at an address in the Province of Ontario, Canada although St. Pierre had notified ASERCO on October 7 that mail should continue to be sent to his residence in the Province of Quebec. Ford Aff. at Ex. B; Joan St. Pierre Aff. at ¶¶ 9 & 12. St. Pierre actually received the notice on January 26, 1988. Joan St. Pierre Aff. at ¶ 12. On December 28, 1987, ASERCO sent notice to St. Pierre, again at the Ontario address, that the insurance policy was canceled effective December 31, 1987. St. Pierre did not receive this notice until after February 19, 1988. *Id.*

On December 28, 1987, unaware of the cancellation notices from ASERCO, St. Pierre sent ASERCO a check for the overdue premium in the amount of $1,298.00. The check was negotiated by ASERCO and credited to St. Pierre's account on January 13, 1988. *Id.* at ¶ 11. Following receipt of the cancellation notice on January 26, St. Pierre contacted Dyer, who advised that the

insurance coverage remained in effect. *Id.* at ¶ 13. However, on February 12, 1988, Connecticut Indemnity sent notice to Kenworth concerning the policy on the tractor and trailer as follows:

Cancellation or termination will take effect on:

Thursday, December 31, 1988 at 12:01 A.M.

You are hereby notified that the insurance coverage issued to [St. Pierre and Que–Van] is hereby canceled (or terminated) in accordance with the conditions of the policy, said cancellation (or termination) to be effective on and after the date and time mentioned above.

Ford Aff. at Ex. G. (emphasis added).

On February 19, 1988, the tractor and trailer were stolen from a garage in Quebec. Joan St. Pierre Aff. at ¶ 14. St. Pierre notified Dyer of the theft and was advised by Dyer that "there should be no problem with the claim." *Id.* at ¶ 15. However, in a notice dated February 25, 1988, Connecticut Indemnity sent to Kenworth a revised "Courtesy Copy of Cancellation or Non Renewal" which was identical to the February 12 notice except that the year of the effective date of the cancellation was changed from 1988 to 1987. Ford Aff. at Ex. H. Connecticut Indemnity also advised St. Pierre in a letter dated March 1, 1988 that the policy had been cancelled by ASERCO effective December 31, 1987 for nonpayment. Connecticut Indemnity accordingly declined coverage for the theft of the tractor and trailer. Joan St. Pierre Aff. at ¶ 17.[3]

### B. Prior Actions

Plaintiffs commenced an action in this district in 1988. The district court granted summary judgment to the defendants on the ground that because the proceeds of the insurance policy were payable to Kenworth rather than to St. Pierre, St. Pierre lacked standing to maintain the action. *St. Pierre v. Coburn Insuring Agency,* No. 88–CV–971, 1993 WL 85757 (N.D.N.Y. Mar. 22, 1993) (McCurn, J.). The Second Circuit Court of

---

**3.** The trailer was recovered in Quebec on March 11, 1988. Ford Aff. at Ex. C. It does not appear that the tractor has ever been recovered.

Appeals affirmed that decision. *St. Pierre v. Coburn Insuring Agency,* 28 F.3d 275, 276 (2d Cir.1994) ("*St. Pierre I* "). In 1996, Kenworth's successor in interest, American Iron & Metal, Inc., commenced an action against St. Pierre in Quebec seeking damages under the lease for the loss of the tractor and trailer. Ford Aff. at Ex. J. St. Pierre failed to answer and has been adjudged in default. Ford Aff. at Ex. K; Levine Aff. (Docket No. 29) at ¶ 18.

### C. This Action

St. Pierre and Que–Van commenced this action on October 3, 1996. Docket No. 1. The complaint alleges claims for contribution, indemnification, breach of fiduciary duty, malpractice and negligence, common law fraud and deceit, breach of contract, claims under state insurance law, and violations of federal and state statutory law. Jurisdiction is alleged for all claims as diversity of citizenship under 28 U.S.C. § 1332 and for a part under 15 U.S.C. § 1601 *et seq.* Various counterclaims, cross-claims and third-party claims have also been asserted.

### II. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law, . . . where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the movant has come forward with sufficient evidence in support of the motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). "Furthermore, the non-movant 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.'" *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir.1996) (citations omitted).

### III. Discussion

### A. Res Judicata

The complaint in *St. Pierre I* alleged eight causes of action for breach of fiduciary duty, negligence, malpractice, common law fraud and deceit, breach of contract and violations of federal and state statutory law. Docket No. 1, Ex. A. The district court there granted the defendants' motions for summary judgment in their entirety.[4] 1993 WL 85757, at *6. That ruling was affirmed in all respects by the court of appeals. 28 F.3d at 276. In the complaint here, the third through the tenth causes of action are identical in all material respects to the eight causes of action in the *St. Pierre I* complaint. Those eight causes of action are, therefore, all barred by the doctrine of res judicata. *See Computer Assocs., Int'l, Inc. v. Altai, Inc.,* 126 F.3d 365, 369 (2d Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1676, 140 L.Ed.2d 814 (1998) (res judicata bars subsequent litigation of claims that were subject of prior suit); *Barth v. Kaye,* 178 F.R.D. 371, 378 (N.D.N.Y.1998)(McAvoy, C.J.)(same). Accordingly, the defendants' motion for summary judgment is granted on this ground as to the third through the tenth causes of action.

### B. Contribution and Indemnification

In *St. Pierre I,* the court of appeals stated at the conclusion of its affirmance of district court's ruling that

> St. Pierre was apparently under a contractual obligation to Kenworth to maintain insurance on the tractor and trailer. Should any claim be made against St.

---

4. In a prior order the district court had dismissed one cause of action and various claims

for damages. Docket No. 49, Ex. R, p. 4, Docket Entry No. 40.

Pierre by Kenworth or any other party based upon the failure to maintain insurance, he could then assert claims over against defendants-appellees that would accrue only when the claim was asserted against him, and therefore would not be time-barred. We make this precautionary assertion to ensure that our affirmance of the dismissal of St. Pierre's claim to the insurance proceeds does not disadvantage him in ways not intended by this court.

28 F.3d at 276. In accordance with that opinion, plaintiffs allege in their first two causes of action in this action claims for contribution and indemnification based on the claim asserted against them in the Canadian action by American Iron ("*American Iron*").

Dyer, Coburn and ASERCO ("defendants") and third-party defendant Connecticut Indemnity (collectively "movants") contend that *American Iron* was time-barred when brought and that plaintiffs failed to assert a statute of limitations defense to that claim. Because *American Iron* is plaintiffs' sole basis for standing in this action, movants contend that plaintiffs' failure to assert the dispositive defense rendered the injury suffered by plaintiffs' default entirely self-inflicted and, therefore, insufficient to establish standing. The threshold question, then, is whether *American Iron* was timely when commenced. That action was filed in Quebec Superior Court and its timeliness presents a question of Canadian law.

## 1. Determination of Foreign Law

Under Fed.R.Civ.P. 44.1, federal courts may consider all information provided by the parties with respect to determining the substance of foreign law and may, but are not required to, conduct their own research on the question. *See Pittway Corp. v. United States*, 88 F.3d 501, 504 (7th Cir.1996); *Anglo Am. Ins. Group, P.L.C. v. CalFed Inc.*, 940 F.Supp. 554, 558 (S.D.N.Y.1996). Independent research frequently proves necessary because "[a]ll too often counsel will do an inadequate job of researching and pre-

senting foreign law." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2444, p. 648 (1995). The Second Circuit has recently "urge[d] district courts to invoke the flexible provisions of Rule 44.1 to determine issues relating to the law of foreign nations." *Curley v. AMR Corp.*, 153 F.3d 5, 1998 WL 458509, at *6 (2d Cir.1998).

Here, plaintiffs and Connecticut Indemnity have each produced affidavits of Canadian attorneys expressing their opinion on the timeliness of *American Iron.* Connecticut Indemnity's attorney affidavits offer an explanation of governing Canadian principles. The affidavits contain several case citations but offer only excerpts rather than full copies of the relevant cases. *See* Docket Nos. 50 & 65. Plaintiffs' attorney affidavit is of less value. Plaintiffs' "expert" is the attorney who initiated American Iron's action against plaintiffs. Not surprisingly, he states, that the action was timely filed because of St. Pierre's longstanding recognition of the debt. This opinion is unsupported by citation to either statute or case law. *See* Docket No. 59. The Court, therefore, has endeavored independently to research the question of Canadian law at issue here. That task has proved difficult. *See Grodinsky v. Fairchild Indus., Inc.*, 507 F.Supp. 1245, 1251 n. 4 (D.Md.1981) (discussing difficulties of deciding question of Quebec law). That research has included statutes, case law and secondary sources on the Westlaw and Lexis computer services, through the Internet and at a law school library.

The question whether *American Iron* was barred under Quebec's applicable statute of limitations is one of law. *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 29 F.3d 79, 81 (2d Cir.1994) (citing Fed. R.Civ.P. 44.1). Though testimony of experts[5] on the foreign jurisdiction's law may constitute the most basic method of determining foreign law, *Republic of Turkey v. OKS Partners*, 146 F.R.D. 24, 27 (D.Mass.

---

5. An "expert" on foreign law "is not required to meet any special qualifications. Indeed he need not even be admitted to practice in the country whose law is in issue." *In re Grand Jury Proceed-*

*ings*, 40 F.3d 959, 964 (9th Cir.1994) (quoting 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 2444, at p. 406 (1971)).

1993), such testimony is not required. *Batruk v. Mitsubishi Motors Corp.*, Nos. 94–Civ.–7593 & 94–Civ.–8677, 1998 WL 307383, at *3 (S.D.N.Y. June 10, 1998). Differences of opinion between experts, as here, do not create issues of material fact precluding summary judgment. *Matter of the Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp.*, 978 F.Supp. 266, 275 (S.D.Tex.1997); *United States v. BCCI Holdings (Luxembourg), S.A.*, 977 F.Supp. 1, 6 (D.D.C.1997), *aff'd*, 159 F.3d 637, 1998 WL 388793 (D.C.Cir. May 6, 1998). When presented, the court may give an expert opinion whatever probative value it deems warranted under the circumstances. *Argonaut Partnership, L.P. v. Bankers Trustee Co., Ltd.*, No. 96–Civ.–1970 & 2222, 1997 WL 45521, at *9 (S.D.N.Y. Feb. 4, 1997) (citing *United States v. First Nat'l Bank of Chicago*, 699 F.2d 341, 344 (7th Cir.1983)); *see also In the Matter of the Application of Euromepa, S.A.*, 154 F.3d 24, 28 (2d Cir. 1998) (courts need not accept contentions of parties about foreign law as true); *Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, No. 96–Civ.–5250, 1997 WL 570494, at *8 (S.D.N.Y. Sept. 15, 1997) (expert opinion insufficient when offered by an interested party).

## 2. Quebec's Period of Prescription

### a. Prescription Generally

The Canadian legal concept of prescription is synonymous with the statutes of limitation concept in American jurisdictions. *In re McDougald's Estate*, 272 A.D. 176, 70 N.Y.S.2d 200, 202 (3d Dep't 1947). Prescription differs, however, in that it constitutes a substantive element of any legal claim. Thus, the expiration of the period extinguishes the cause of action outright rather than creates a procedural bar to its consideration. *Richardson v. Therrien*, 1991 Ont. C.J. Lexis 486, at *9–10 (Ont.Ct.Gen.Div. Mar. 22, 1991); *see also Lake v. Richardson–Merrell, Inc.*, 538 F.Supp. 262, 269 (N.D.Ohio 1982); *Icelandic Airlines, Inc. v. Canadair, Ltd.*, 104 Misc.2d 239, 428 N.Y.S.2d 393, 398 (1980).

At the time of *American Iron*, section 2260 of the Quebec Civil Code provided as follows:

The following actions are prescribed by five years:

(4) Upon inland or foreign bills of exchange, promissory notes, or notes for the delivery of grain or other things, whether negotiable or not, *or upon any claim of a commercial nature*, reckoning from maturity; this prescription however does not apply to bank notes;

(Emphasis added). American Iron's claim against St. Pierre sounded in breach of contract, for failing to maintain contractually required insurance. As such, it was governed by this five year prescriptive period for commercial transactions. *See* Pierre Martineau, *La Prescription* (1977) (translated and excerpted in Docket No. 36, Ex. L) (five year limitation applies to actions seeking damages for breach of contract). None of the parties to this action have suggested that a different limitation period should be applied to *American Iron.*

Nor has there been any suggestion that the Canadian claim accrued at any time other than the time of the loss against which the insurance would have protected. That loss occurred on February 19, 1988, when the tractor and trailer were stolen, or no later than March 1, 1988, when Connecticut Indemnity declined coverage for the theft. From this time the applicable five year period, running uninterrupted, expired on either February 19, 1993 or March 1, 1993. At the latest, then, any claim against St. Pierre for his failure to maintain insurance as required by his contract with Kenworth was prescribed on March 1, 1993. Thus, because *American Iron* was not commenced until 1996, that action may only be deemed timely if there exists an exception to prescription.

### b. Interruption and Revival

Plaintiffs make two arguments in support of their contention that *American Iron* was timely and, therefore, is sufficient to confer standing. First, they contend that the period of prescription was interrupted prior to its expiration by St. Pierre's acknowledgment of the debt. This interruption, plaintiffs argue,

prevented the prescription period from expiring. Second, plaintiffs contend that even if the statutory period had expired prior to *American Iron*, the claim has now been revived by St. Pierre's post-prescription acknowledgment of the debt.

### i. Interruption

█ Quebec law provides for the interruption of a period of prescription and mere acknowledgment of a debt suffices to interrupt prescription. *See Levy & Sons v. Weinish*, 61 D.L.R. 536, 538 (Que.Super.Co.1920); Second Borenstein Aff. (Docket No. 65), ¶ 17 (conceding that mere acknowledgment of debt interrupts prescription). Plaintiffs contend that St. Pierre has at all times "consistently acknowledged [his] obligations to Kenworth." Andre St. Pierre Aff. (Docket No. 58), ¶ 34. As corroborating evidence, plaintiffs point to three separate statements St. Pierre made concerning his debt to Kenworth. All occurred after the period of prescription had expired. *See* Crowther Aff. (Docket No. 49), Ex. P (correspondence to Second Circuit in *St. Pierre I* dated February 4, 1994); *id.*, Ex. U (St. Pierre's reply brief in *St. Pierre I* dated March 18, 1994); and Borenstein Aff., Ex. J (letter to Kenworth dated September 6, 1994). Plaintiffs contend that the sworn statement by St. Pierre that he "consistently acknowledged" the debt to Kenworth within the period of prescription, as corroborated by the documented acknowledgments after the expiration of that period, suffices to create an issue of fact and to defeat movants' motion on this ground.

The only evidence offered by plaintiffs of any *acknowledgment of the debt within the period of prescription* is thus St. Pierre's sworn assertion. That conclusory assertion fails to identify when, where, to whom or in what words St. Pierre ever acknowledged the debt. In the circumstances of this case, that assertion is also self-serving, as are the post-prescription documentary acknowledgments. Such conclusory, self-serving statements are insufficient to create a question of fact on a motion for summary judgment. *See, e.g., Peck v. Horrocks Engineers, Inc.*, 106 F.3d 949, 955–56 (10th Cir.1997)(statement in affi-

davit that defendant contractually assumed duty of care to plaintiff failed to allege facts sufficient to create issue defeating motion for summary judgment); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir.1996)(African–American coach's statement that African–American players were treated more harshly than white players failed to specify how, to whom or by whom such treatment was inflicted and was, therefore, insufficient to create issue of fact); *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220–21 (9th Cir.1980)(in securities fraud case, plaintiff's reliance on conclusory statements and his failure to specify time, place or nature of alleged fraudulent activities insufficient to create issue of fact on motion for summary judgment); *Barrett v. Speidel*, No. 94–CV–1499 (RSP/DNH), 1996 WL 266347, at *5 (N.D.N.Y. May 13, 1996)(Pooler, J.)("Conclusory allegations that do not rest on specific facts cannot defeat a properly supported summary judgment motion."); *Dukes v. Illinois Cent. R.R. Co.*, 934 F.Supp. 939, 951 n. 3 (N.D.Ill.1996)(doctor's conclusory statement in affidavit that plaintiff's injury was caused by defendant insufficient on motion for summary judgment to create issue of fact as to causation).

Thus, the record establishes that the period of prescription on St. Pierre's debt expired without interruption prior to the commencement of *American Iron.*

### ii. Revival

█ Plaintiffs contend that the same standards apply to both interruption and revival. Thus, as relevant here, a mere acknowledgment of a debt would just as equally suffice to revive a prescribed debt as to interrupt the running of the period of prescription. The sole authority offered in support of this position is the affidavit of American Iron's attorney, L.B. Erdle. Docket No. 59. Movants contend that revival requires the renunciation of the right to assert the prescription defense by the party to whom it belongs and that the renunciation itself requires express and precise language. *See* Second Borenstein Aff., ¶¶ 17–21.

The Quebec Civil Code constitutes the primary source of legal authority in that jurisdiction. *See* Canadian Dep't of Justice Inter-

net Website (visited Aug. 24, 1998) <http:**Canada.justice.gc.ca/Publications/Info_education/CSJ/CSJ_page 7_enhtml> ("Unlike common-law courts, courts in a civil-law system first look to the Code, and then refer to previous decisions for consistency."); *see also Matos–Rivera v. Flav–O–Rich,* 876 F.Supp. 373, 375 & 377 (D.P.R.1995) (civil statutes hold highest authority in civil law systems). The Code, however, does not answer the question presented herein.[6]

Quebec courts have long recognized distinctions between interruption and renunciation. *See Bernard v. Pelissier,* 8 D.L.R. 545, 547 (Que. Ct. of King's Bench 1912). Central to that distinction is a requirement that a heavier burden be carried to demonstrate renunciation and revival than interruption. "A renunciation to prescription is a new contract which must contain the elements thereof—in this case a promise to pay the debt due." *Id.* Renunciation requires "a new obligation or an unequivocal promise to pay the prescribed debt." *Catellier v. Belanger,* 4 D.L.R. 267, 271 (Sup.Ct. of Can.1924). The cases cited by Connecticut Indemnity support this conclusion.[7] *See Dodier v. Dodier,* [1934] B.R. 221 ("an acknowledgment of debt cannot be a renunciation of acquired prescription unless it contains a promise to pay, as it is that promise which comprises the renunciation to acquired rights"); *Lagace–Couillard v. Prince,* No. 200–05–003414–807, J.E. 85–1075 (Que.Super.Ct.) ("an acknowledgment of debt does not constitute a renunciation to acquired prescription if it does not contain a promise to pay").[8] Accordingly, under the law of Quebec, renunciation of prescription requires the establishment of a new contract which must include a definite promise to pay the debt owed on a date certain.

It is clear from this record that plaintiffs have not met these requirements. St. Pierre has undoubtedly acknowledged a debt. Andre St. Pierre Aff., ¶ 34. He has at no time, however, promised to pay money admittedly owed. In fact, the closest St. Pierre has come to an unconditional promise to pay on a date certain is his hope, expressed in a 1994 letter that he will be in a position in the "near future" to pay his debt. Borenstein Aff., Ex. J. This fails to satisfy the requirement of a promise to pay on a date certain. Thus, the claim asserted in *American Iron* was prescribed and not revived.

### 3. Plaintiffs' Standing

■ Article III of the Constitution confers jurisdiction on federal courts only over "cases" and "controversies." *Lee v. Board of Governors of the Fed. Reserve Sys.,* 118 F.3d 905, 910 (2d Cir.1997). Several distinct doctrines have been developed to determine what constitutes a case or controversy for purposes of Article III. *Comer v. Cisneros,* 37 F.3d 775, 787 (2d Cir.1994). "Foremost among these is the doctrine of standing." *Id.; see also Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (standing "is perhaps the most important of these doctrines."). Standing, therefore, is a prerequisite to jurisdiction and federal courts lack subject matter jurisdiction to hear and decide claims brought by litigants without standing. *In re United States Catholic Conference,* 885 F.2d 1020, 1023 (2d Cir.1989); *Craft v. McNulty,* 875 F.Supp. 121, 124 (N.D.N.Y.1995) (McAvoy, C.J.).

■ Reduced to its constitutional minimum, standing requires an injury in fact, that injury must be fairly traceable to the challenged activities of the defendant(s), and the injury must be such that it may be

---

**6.** The Code was substantially revised effective in 1994. Borenstein Aff., n. 1. No suggestion has been made that any of those changes either affect the outcome of these motions or would apply retroactively if they did.

**7.** Plaintiffs offer no challenge to the cases cited in the affidavits of Joshua Borenstein and relied on by Connecticut Indemnity. In addition, plaintiffs have failed to offer any cases that either support their position or call into question the cases cited in the Borenstein affidavits.

**8.** The same rule exists in Louisiana, a civil law system. *See Mikulecky v. Marriott Corp.,* 854 F.2d 115, 119 (5th Cir.1988) ("The acknowledgment that a debt exists is not sufficient to renounce an accrued prescription, even if accompanied by payment on account of the debt. When the debt is based on a promise to pay, there must be a new promise made to pay the debt in order to nullify the accrued prescription.") (citations and internal quotation omitted).

redressed through the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Rockefeller v. Powers*, 74 F.3d 1367, 1375–76 (2d Cir.1995), *cert. denied*, 517 U.S. 1203, 116 S.Ct. 1703, 134 L.Ed.2d 802 (1996).[9] Through these requirements, the standing doctrine ensures that the federal courts adjudicate only "those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Federal courts are not forums for the litigation of friendly, feigned, non-adversarial or collusive claims. *See United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 749 (9th Cir.1993); *Comite de Apoyo a los Trabajadores Agricolas v. United States Dep't of Labor*, 995 F.2d 510, 513 (4th Cir.1993).

■ The injury in fact standard requires the "invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Northeastern Fla. Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (internal quotation marks omitted). However, a self-inflicted injury, no matter how concrete or actual, affords no basis for standing. *Diamond v. Charles*, 476 U.S. 54, 70, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Frank v. United States*, 78 F.3d 815, 822 (2d Cir. 1996), *vacated on other grounds*, —— U.S. ——, 117 S.Ct. 2501, 138 L.Ed.2d 1007 (1997).

■ Why an injury inflicted upon oneself raises questions about the propriety of federal jurisdiction sufficient to warrant denial of standing is well demonstrated by the instant case. Plaintiffs' initial lawsuit here was dismissed because Kenworth rather than plaintiffs was entitled to any insurance payment for which defendants might be liable. Thus, plaintiffs were not directly affected. *St. Pierre I*, 1993 WL 85757, at *4. In affirming

that conclusion, the Second Circuit noted that were Kenworth to pursue legal action to hold plaintiffs directly liable for breaching the contract, plaintiffs might then seek recourse from the defendants here. *St. Pierre I*, 28 F.3d at 276. Kenworth acquiesced, but St. Pierre defaulted and suffered the adverse judgment necessary to commencing this action. A necessary prerequisite to this action, therefore, rests on St. Pierre's decision to manufacture jurisdiction here by incurring a judgment, which he could legally and reasonably have avoided. The standing doctrine serves to bar such claims from federal court. *See Morris v. Local 819, IBT*, No. 94–Civ.–8100, 1995 WL 293623, at *1 (S.D.N.Y. May 11, 1995) (parties may not manipulate matters to secure or avoid federal jurisdiction).

■ The judgment against St. Pierre is a self-inflicted injury because, as noted above, he had a readily available and viable defense. Action by a plaintiff independent of the challenged conduct by defendants, that by itself subjects the plaintiff to the injury asserted in the lawsuit, defeats standing. 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2531.5, at 458 (1984). Self-inflicted injuries then are those resulting from the voluntary acts of a plaintiff which are distinct from a defendant's conduct. Such injuries simply provide no basis for Article III standing. *See Taylor v. FDIC*, 132 F.3d 753, 767 (D.C.Cir.1997) (voluntary departure from employer was self-inflicted and party, therefore, lacked standing to assert action for reinstatement); *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C.Cir. 1996) (organization's disclosure of fact that F.B.I. maintained file on it defeated standing for claim that maintenance of file posed risk that outsiders may learn of file because injury, public knowledge of file, was self-inflicted), *cert. denied sub nom.*, *Lindblom v. F.B.I.*, —— U.S. ——, 118 S.Ct. 296, 139 L.Ed.2d 228 (1997).[10]

---

9. Various prudential concerns, not relevant here, also may warrant a denial of standing. *See Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58 (2d Cir.1994).

10. A review of the record of the oral argument on these motions confirms that plaintiffs' counsel conceded that if *American Iron* was untimely, plaintiffs lacked standing to maintain this action.

Plaintiffs lack standing to maintain this action. Movants' motions for summary judgment on that ground accordingly are granted.[11]

## IV. Conclusion

**WHEREFORE,** for the reasons set forth above, it is hereby

**ORDERED** that the motions of defendants Luke Dyer, Coburn Insuring Agency, Inc. and Agents Service Corporation for summary judgment are **GRANTED** in all respects; and

**IT IS FURTHER ORDERED** that the actions against third-party defendants Connecticut Indemnity and American Iron and Metal, Inc. are **DISMISSED** as moot; and

**IT IS SO ORDERED.**

---

**11.** Because summary judgment is granted on plaintiffs' claims against the defendants, the third-party claims are moot and must be dismissed. *See Welch v. Dura–Wound, Inc.,* 894 F.Supp. 76, 79 (N.D.N.Y.1995) (Hurd, M.J.) (dismissing as moot third-party claim when third-party plaintiff's motion for summary judgment on main claim was granted); *St. Pierre I,* 1993 WL 85757, at *6 (same); *Catherman v. United States,* No. 90–CV–576, 1992 WL 175258, at *17 (N.D.N.Y. July 21, 1992) (Munson, J.) (same).