**Andre ST. PIERRE, Plaintiff–Appellant,**

**Que–Van Transport, Inc., Plaintiff,**

**v.**

**Luke R. DYER, Defendant–Cross–Defendant–Third–Party–Plaintiff–Counter–Defendant–Appellee,**

**Coburn Insuring Agency, Inc., Defendant–Cross–Defendant–Appellee,**

**Agents Service Corporation, Defendant–Cross–Claimant–Cross–Defendant–Appellee,**

American Iron and Metal, Inc.,
Third–Party–Defendant–
Cross–Defendant,

Connecticut Indemnity Company, C/O NYS Department of Insurance, Third–Party–Defendant–Counter–Claimant–Cross–Claimant.

Docket No. 99–7118.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 23, 1999.

Decided: March 24, 2000.

Andre St. Pierre, St. Lin, Quebec, Canada, Plaintiff pro se.

Thuillez, Ford, Gold & Johnson, Albany, New York (Debra J. Schmidt, Albany, New York, of counsel), for Defendant–Cross–Defendant–Third–Party–Plaintiff–Counter–Defendant–Appellee Luke R. Dyer.

Ainsworth, Sullivan, Tracy, Knauf, Warner & Ruslander, Albany, New York (Colleen M. O'Connell, Albany, New York, of counsel), for Defendant–Cross–Defendant–Appellee Coburn Insuring Agency, Inc.

Fernandez, Burstein & Tuczinski, Albany, New York (Richard L. Burstein, Albany, New York, of counsel), for Defendant–Cross–Claimant–Cross–Defendant–Appellee Agents Service Corporation.

MacKenzie, Smith, Lewis, Michell & Hughes, Syracuse, New York (David M. Garber, Thomas J. Finn, Syracuse, New York, of counsel), for Third–Party–Defendant–Counter–Claimant–Cross—Claimant Connecticut Indemnity Company.

Before: WINTER, Chief Judge, KEARSE, Circuit Judge, and MORDUE, District Judge.[*]

KEARSE, Circuit Judge:

Plaintiff *pro se* Andre St. Pierre, who was represented by counsel in the district court, appeals from so much of a judgment of the United States District Court for the Northern District of New York, David R. Homer, *Magistrate Judge*, as dismissed his complaint seeking damages from defendants Luke R. Dyer and Coburn Insuring Agency, Inc. ("Coburn"), for, *inter alia,* negligence, fraud, breach of contract, and breach of fiduciary duty, and seeking indemnification and contribution from Dyer, Coburn, and defendant Agents Service Corporation ("ASERCO") for damages owed by St. Pierre in connection with the loss of uninsured leased property. The district court ruled that res judicata barred all of St. Pierre's claims except those for indemnity and contribution; the

court concluded that St. Pierre lacked standing to assert his claims for indemnity and contribution because he had failed to assert a statute-of-limitations defense in the action in which he was ordered to pay damages relating to the uninsured property, thereby rendering his injury self-inflicted. For the reasons that follow, we conclude that principles of standing and res judicata are largely inapplicable to the present suit, and we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

The present case is the second action brought by St. Pierre against Dyer, Coburn, and ASERCO. The factual background of the controversy is set out in greater detail in the opinion of the district court dismissing St. Pierre's first action, *see St. Pierre v. Coburn Insuring Agency,* 1993 WL 85757, at *1–3 (N.D.N.Y.1993) ("*St. Pierre I* "), *aff'd,* 28 F.3d 275, 276 (2d Cir.1994) (per curiam) ("*St. Pierre II* "), and will be summarized only briefly here.

In July 1987, St. Pierre leased a tractor and trailer from Kenworth Metropolitan, Inc. ("Kenworth"); the lease required, *inter alia,* that St. Pierre maintain insurance on the leased property for the sole benefit of Kenworth. Dyer, an insurance broker employed by Coburn, helped St. Pierre to obtain a property insurance policy from Connecticut Indemnity Company ("Connecticut Indemnity") and to obtain financing for the insurance through ASERCO. The policy named St. Pierre as the insured and Kenworth and its holding company as loss payees.

St. Pierre was required to pay monthly installments to ASERCO in order to maintain his coverage. In November 1987, however, he missed a payment. ASERCO mailed notice that the policy would be canceled if payment were not received by December 28, 1987. When payment was

---

[*] Honorable Norman A. Mordue, of the United States District Court for the Northern District of New York, sitting by designation.

not received by that date, ASERCO sent a second notice, dated December 30, 1987, stating that St. Pierre's policy would be canceled as of December 31, 1987. According to St. Pierre, however, because of erroneous instructions from Coburn to ASERCO, ASERCO mailed the notices to an inappropriate address, and St. Pierre did not receive them until late January 1988. In the meantime, he sent ASERCO a check for the overdue premium, which ASERCO negotiated in mid-January; and after St. Pierre received the notice of cancellation, he was assured by Dyer that the insurance remained in force. Connecticut Indemnity, however, canceled the policy as of December 31, 1987.

On February 19, 1988, the tractor and trailer were stolen. Coburn filed a claim on behalf of St. Pierre; by letter dated March 1, 1988, Connecticut Indemnity refused to pay. In September 1988, St. Pierre sued Dyer, Coburn, and ASERCO, asserting eight claims against Dyer and Coburn or against Dyer and ASERCO, and seeking damages for, *inter alia,* negligence, fraud, breach of contract, and breach of fiduciary duty. St. Pierre asserted that but for defendants' misfeasances in connection with his policy, Connecticut Indemnity would have paid his claim for the loss of the tractor and trailer. In *St. Pierre I,* the district court granted summary judgment dismissing that complaint on the ground that, because St. Pierre was not a "loss payee" under the policy, he had no standing to maintain the suit. *See* 1993 WL 85757, at *6. On appeal, we affirmed; but we noted that

> [s]hould any claim be made against St. Pierre by Kenworth or any other party based upon the failure to maintain insurance, [St. Pierre] could then assert claims over against defendants-appellees that would accrue only when the claim was asserted against him, and therefore would not be time-barred.

*St. Pierre II,* 28 F.3d at 276.

In 1996, Kenworth's successor in interest, American Iron & Metal, Inc. ("American Iron"), brought suit against St. Pierre, a Canadian citizen, in Quebec, seeking damages under the lease. St. Pierre defaulted, and a judgment was entered against him in the amount of $102,409.23.

Following final judgment in the Quebec action, St. Pierre and his company, plaintiff Que-Van Transport, Inc., commenced the present action. As in the first action, St. Pierre sued Dyer, Coburn, and ASERCO, asserting eight claims against various combinations of defendants and seeking damages for *inter alia,* breach of fiduciary duty, breach of contract, and negligence in connection with the handling of his account; in addition, St. Pierre asserted two claims against all three defendants seeking contribution and indemnification with respect to the amount of the American Iron judgment against him.

In a Memorandum–Decision and Order reported at 21 F.Supp.2d 138 (1998) ("*St. Pierre III* "), the district court dismissed the complaint. As discussed in Part II.A. below, the court ruled that St. Pierre's claims other than for indemnity and contribution were the same as those that had been dismissed in *St. Pierre I* and were therefore barred by res judicata. *See St. Pierre III,* 21 F.Supp.2d at 141. As discussed in greater detail in Part II.B. below, the district court dismissed St. Pierre's claims for indemnity and contribution on the ground that St. Pierre did not have standing to sue. *See id.* at 145–47.

With respect to the latter dismissal, the district court noted that American Iron's breach-of-contract action against St. Pierre was brought in 1996 but that, under Quebec law, the action was subject to a five-year "prescription," analogous to a statute of limitations. *See id.* at 143. Because that five-year period had commenced no later than March 1, 1988, when Connecticut Indemnity denied coverage, the court concluded that St. Pierre had had a valid timeliness defense against American Iron's 1996 action. The court rejected arguments by St. Pierre that the American Iron action was timely under either of two

Quebec-law principles that may affect an action's timeliness, to wit, the doctrine of "interruption," which provides that a prescription period is interrupted by the "mere acknowledgment" of the debt, *id.* at 144, or the doctrine of "revival," under which one who has a timeliness defense to an otherwise enforceable debt may restart the prescription period by a "renunciation" of the defense, *id.* at 144–45. Although St. Pierre submitted an affidavit stating that he had "consistently acknowledged [his] obligations to Kenworth" "[t]hroughout" the prescription period (St. Pierre Affidavit dated April 21, 1998 ("St. Pierre Aff."), ¶ 34), the court found his assertion to be "self-serving," "conclusory," and unsupported by any evidence, *St. Pierre III*, 21 F.Supp.2d at 144. The court rejected St. Pierre's invocation of the revival doctrine, noting that "[a] renunciation to prescription is a new contract which must contain the elements thereof—in this case a promise to pay the debt due." *Id.* at 145 (internal quotation marks omitted). The court found that although St. Pierre had acknowledged his debt, "[h]e has at no time . . . promised to pay money admittedly owed." *Id.*

Concluding, therefore, that St. Pierre had had "a readily available and viable [untimeliness] defense" to American Iron's action, the district court dismissed his claims for indemnity and contribution with respect to the amounts he had been ordered to pay American Iron because

> [t]he judgment against St. Pierre is a self-inflicted injury. . . . Action by a plaintiff independent of the challenged conduct by defendants, that by itself subjects the plaintiff to the injury asserted in the lawsuit, defeats standing. . . . Self-inflicted injuries then are those resulting from the voluntary acts of a plaintiff which are distinct from a defendant's conduct. Such injuries simply provide no basis for Article III standing.

*Id.* at 146.

Various claims that had been asserted by defendants against each other, by Dyer against third-party-defendants, and by third-party-defendants against each other, were dismissed as moot, and a final judgment was entered. This appeal followed.

## II. DISCUSSION

On appeal, St. Pierre contends that the district court erred in dismissing his claims. We note preliminarily that the defendants sued by St. Pierre have filed one– or two-page letter briefs in opposition to his appeal, adopting the reasoning of the district court in dismissing the present complaint. A more extensive brief has been submitted by Connecticut Indemnity. However, Connecticut Indemnity was not sued by St. Pierre and hence is not a party to his appeal. Further, although Connecticut Indemnity was a third-party-defendant on a claim asserted by Dyer, Dyer's claims were dismissed by the district court, and Dyer did not file a notice of appeal. Accordingly, Connecticut Indemnity has no status as a party to this appeal. We will consider its brief as that of an *amicus curiae.*

As to the merits of the appeal, we disagree with the district court's ruling that res judicata bars most of St. Pierre's claims, and we conclude that his claims for indemnification and contribution should not have been dismissed for lack of standing.

### A. *Principles of Preclusion*

Under the doctrine of res judicata, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *see, e.g., Balderman v. United States Veterans Administration*, 870 F.2d 57, 62 (2d Cir. 1989); *Teltronics Services, Inc. v. L M Ericsson Telecommunications, Inc.*, 642

F.2d 31, 35 (2d Cir.), *cert. denied,* 450 U.S. 978, 101 S.Ct. 1511, 67 L.Ed.2d 813 (1981). However, a dismissal for lack of subject matter jurisdiction is not an adjudication of the merits, and hence has no res judicata effect. *See, e.g., Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996); *Thompson v. County of Franklin,* 15 F.3d 245, 253 (2d Cir.1994). Further, while a previous judgment may preclude litigation of claims that arose "prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

■ In its res judicata ruling in the present case, the district court noted that eight of St. Pierre's present claims, *i.e.,* those other than for indemnification and contribution, were virtually identical to the claims originally asserted by St. Pierre in *St. Pierre I.* The court stated that all of the original claims—except for "one cause of action" that had been dismissed "[i]n a prior [*St. Pierre I* ] order," *St. Pierre III,* 21 F.Supp.2d at 141 n. 4—had been dismissed in the *St. Pierre I* opinion reported at 1993 WL 85757, and that the *St. Pierre I* judgment thus barred St. Pierre's assertion of his present similar claims:

> The complaint in *St. Pierre I* alleged eight causes of action for breach of fiduciary duty, negligence, malpractice, common law fraud and deceit, breach of contract and violations of federal and state statutory law.... The district court there granted the defendants' motions for summary judgment in their entirety.... 1993 WL 85757, at *6. That ruling was affirmed in all respects by the court of appeals. 28 F.3d at 276. In the complaint here, the third through the tenth causes of action are identical in all material respects to the eight causes of action in the *St. Pierre I* complaint. Those eight causes of action are,

therefore, all barred by the doctrine of res judicata.

*St. Pierre III,* 21 F.Supp.2d at 141.

Our principal difficulty with this ruling is that the *St. Pierre I* summary judgment dismissed St. Pierre's original claims not on their merits but only for lack of Article III standing. *See St. Pierre I,* 1993 WL 85757, at *3 (granting defendants' motions which were "tantamount to a challenge to plaintiffs' standing to maintain this action"); *St. Pierre II,* 28 F.3d at 275 ("[i]n a thorough opinion, the [*St. Pierre I* ] court granted summary judgment in favor of the defendants-appellees on the basis that St. Pierre lacked standing because the proceeds of the lapsed policy were payable not to St. Pierre, but rather to Kenworth and another"); *id.* at 276 ("affirm[ing] substantially for the reasons stated in the opinion of the district court"); *St. Pierre III,* 21 F.Supp.2d at 140 (noting that the *St. Pierre I* court "granted summary judgment to the defendants on the ground that because the proceeds of the insurance policy were payable to Kenworth rather than to St. Pierre, St. Pierre lacked standing to maintain the action"). Since a dismissal for lack of Article III standing is a dismissal for lack of subject matter jurisdiction, *see, e.g., Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1091 (2d Cir.1995); *Thompson v. County of Franklin,* 15 F.3d at 247–49, the *St. Pierre I* judgment has no res judicata effect with respect to most of St. Pierre's claims.

The district court correctly ruled that St. Pierre's present claims for indemnification and contribution are not barred by res judicata. St. Pierre could not have asserted those claims in his prior action, for at the time of that action he had not been sued by American Iron. Indeed, this Court, in affirming the dismissal of St. Pierre's prior complaint, pointed out explicitly that St. Pierre would be able to assert claims against these defendants if and when a claim were made against him by Kenworth or any other person based on the failure to maintain insurance, but that such a claim

by St. Pierre "would accrue only when the claim was asserted against him." *St. Pierre II,* 28 F.3d at 276.

■ We note that the district court stated that one of St. Pierre's original claims had been dismissed prior to the summary judgment dismissal in *St. Pierre I. See St. Pierre III,* 21 F.Supp.2d at 141 n. 4. The *St. Pierre III* court did not identify the claim to which it was referring, and since the record in *St. Pierre I* is not before us, we know neither which claim was so dismissed nor whether that dismissal was a merits-type disposition that would bar relitigation of that claim. However, even if one of St. Pierre's claims for damages is barred by res judicata, he is not necessarily precluded from proving the underlying alleged acts of misfeasance in connection with his request for indemnification and contribution. A claim for indemnification and contribution must be premised on the defendant's breach of a duty to the plaintiff—whether grounded in express contract, implied contract, or tort. *See generally Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir.1986). An actual adjudication in *St. Pierre I* of any of the alleged derelictions might of course preclude St. Pierre from pursuing such an allegation in support of his indemnification and contribution claims. *See, e.g., Lawlor v. National Screen Service Corp.,* 349 U.S. at 326, 75 S.Ct. 865 (parties generally may not relitigate an issue that was litigated and actually decided, and whose resolution was necessary to the prior judgment). However, other than the fact that St. Pierre was not a loss payee on the insurance policy, and the nonexistence of his right to policy proceeds, defendants have not called to our attention any fact that was actually adjudicated in *St. Pierre I.*

In sum, so far as is discernable from this record, most, if not all, of St. Pierre's claims for damages in *St. Pierre I* were not dismissed on the merits; hence, the jurisdictional dismissal does not bar his assertion of those claims here. Nor, so far

as we have been informed, has there been any prior adjudication of any of the factual allegations underlying those claims or his claims for indemnification and contribution. We thus conclude that St. Pierre, while barred from proceeding on any theory of entitlement to insurance proceeds, is not precluded from pursuing his claims for damages or his claims for indemnification and contribution on the theory that defendants caused him to be held liable to American Iron by reason of their alleged misfeasances.

### B. *Standing*

As to the district court's ruling that St. Pierre lacked standing to pursue his claims for indemnification and contribution, we have several difficulties, doctrinal and procedural.

At an "irreducible constitutional minimum," Article III standing requires (1) that the plaintiff have suffered an "injury in fact," *i.e.,* an injury that is "concrete and particularized" as well as "actual or imminent," rather than merely "conjectural or hypothetical"; (2) that there be a "causal connection between the injury and the conduct complained of," *i.e.* that the injury be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court"; and (3) that it be likely that the injury complained of would be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted).

The district court apparently did not conclude that St. Pierre failed to meet the first of these criteria; nor could it reasonably have so concluded, for St. Pierre is subject to a judgment requiring him to pay American Iron more than $100,000—an injury that is concrete, particular, and actual. Nor could the court properly have concluded, with respect to the third criterion, that the injury would not be redressed by a favorable decision on St. Pierre's

complaint, for the complaint sought, *inter alia,* a monetary award to St. Pierre in the amount of the judgment against him. Rather, the court ruled that St. Pierre lacked standing because he failed to meet the second criterion: the court found that there was no causal connection between St. Pierre's injury and the conduct attributed to defendants, concluding that his injury was "independent of the challenged conduct by defendants," and that it was ·St. Pierre's conduct "by itself [that] subject[ed] him] to the injury asserted in the lawsuit." *St. Pierre III,* 21 F.Supp.2d at 146 ("a self-inflicted injury, no matter how concrete or actual, affords no basis for standing"). We disagree with the district court's analysis.

Not every infirmity in the causal chain deprives a plaintiff of standing. Although "standing has been denied because the injury seems *solely* attributable to the plaintiff," 13 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3531.5, at 457 (2d ed.1984) (emphasis added),

> [s]tanding is not defeated merely because the plaintiff has in some sense contributed to his own injury. Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain.

*Id.* at 458. "So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing . . . ." *Id.* at 461.

St. Pierre's obligation to American Iron could not properly be characterized as "independent" of the challenged conduct of the defendants. St. Pierre asserts that his loss of insurance, which gave rise to his personal obligation to reimburse American Iron for the value of the tractor and trailer, was the direct result of defendants' misfeasance. And, as we noted in *St. Pierre II,* St. Pierre's ability to assert claims for indemnity and contribution in connection with the lapse of his insurance was entirely dependent on the assertion of a claim by Kenworth or another against St. Pierre. Thus, the contention is that St. Pierre would have had no personal obligation to pay American Iron had it not been for defendants' misfeasance; and he could not assert an indemnification or contribution claim against defendants with respect to that misfeasance until a claim was made against him by American Iron.

■ Further, we are skeptical of the court's characterization of St. Pierre's injury as "self-inflicted" as that term is used in analyzing standing. There is no indication in the record that St. Pierre was implicated in the theft of the tractor and trailer. It is true that he failed to make an insurance premium payment, which resulted in the cancellation of his policy; but he alleged that defendants breached duties to him thereafter when, for example, Dyer and Coburn repeatedly assured him that his insurance was intact, when Coburn caused ASERCO to send notices to an incorrect address, and when ASERCO negotiated his premium check some two weeks after Connecticut Indemnity had canceled the policy. St. Pierre argues that had he not received those indicia that his coverage was intact, he could have promptly secured a replacement policy and avoided any personal liability. St. Pierre plainly· has alleged that defendants engaged in conduct that contributed to causing his injury. We conclude that his obligation to American Iron should have been viewed as fairly traceable to defendants' alleged misfeasance, rather than independent of it.

Although Connecticut Indemnity's brief suggests that St. Pierre's obligation to American Iron should not be deemed a real injury on the ground that the Canadian lawsuit was "collusive and a contrivance" and a "sham" (Connecticut Indemnity brief at 21), we see no indication in the record that defendants presented evidence to support such a view. To the contrary, it is undisputed that St. Pierre was contractually required to maintain insurance coverage on the leased property, that he failed to do so, that the property

was uninsured when stolen, and that the lessor's successor in interest sued him to recover the value of the property. These facts do not suggest a collusive lawsuit.

The district court's ruling that St. Pierre's injury was self-inflicted, and therefore deprived him of standing even to bring suit, simply because he failed to raise a statute-of-limitations defense, is a novel one. Neither defendants nor the district court have called to our attention any case in which a plaintiff's injury has been held to be self-inflicted, and insufficient to confer standing, where the injury did not involve an unreasonable decision on the part of the plaintiff to bring about a harm that he knew to be avoidable. Connecticut Indemnity, in its argument that St. Pierre lacks standing because he could have avoided his injury, cites *Ellerman Lines, Ltd., v. The Steamship President Harding*, 288 F.2d 288, 290 (2d Cir.1961) ("*Ellerman Lines*"), for the proposition that "a plaintiff is not ... allowed to recover for a loss which it could have reasonably mitigated" (Connecticut Indemnity brief at 17 (internal quotation marks omitted)). That case, however, more clearly indicates that the lack-of-standing ruling with which we are concerned here was not sound but flawed.

In *Ellerman Lines*, the plaintiff had recovered an award, and the issue on appeal was whether that recovery properly included compensation for one item of damage that the plaintiff could have avoided. There was no question whatever as to whether the plaintiff had standing; the only question was mitigation of damages. Judge Friendly's discussion of the mitigation principle is nonetheless instructive:

[A] tort defendant is not liable for consequences preventable by action that reason requires the plaintiff to take; per contra if the plaintiff takes such action within the range of reason, the defendant is liable for further damages resulting therefrom.... [T]he community's notions of fair compensation to an injured plaintiff do not include wounds which in a practical sense are self-inflicted.

All this is easy enough; the troubles come when the standard of "reason" must be further refined and applied. *It is not fatal to recovery that one course of action, reasonably open but not followed, would have avoided further injury whereas another, also reasonable and taken, produced it. "If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen."* McCormick, [*Damages* (1935)], at p. 134.... [I]n many cases, ... the very impact of the injury may leave only what seems a choice of evils....

*Ellerman Lines*, 288 F.2d at 290 (emphasis ours).

In the district court, Connecticut Indemnity submitted an affidavit from a consultant on Canadian law, which stated that the consultant could "no[t] ... imagine a logical reason why St. Pierre would have" "abandon[ed his] right to assert prescription." (Affidavit of Joshua C. Borenstein dated March 9, 1998 ("First Borenstein Aff."), ¶ 30.) Whatever the limitations on counsel's imagination, they would not constrain a properly instructed jury, which might rationally find that St. Pierre had chosen the lesser of two evils, wishing to continue his business using leased equipment. It may be that, if St. Pierre indeed possessed a valid statute-of-limitations defense, the jury will ultimately conclude that St. Pierre's decision to default in the American Iron action was not within the range of reason. But this is a matter more properly viewed as going to the merits rather than to standing.

## C. The Propriety of Summary Judgment on the Present Record

Finally, we have procedural difficulties with the district court's ruling, on summary judgment, that St. Pierre possessed an ironclad prescription defense. That

ruling was based on factual findings (a) that St. Pierre had not sufficiently acknowledged his debt to Kenworth prior to the expiration of the prescription period to interrupt that period, and (b) that St. Pierre had taken no action sufficient to revive the debt after the expiration of the prescription period. The resolution of these factual issues as to the nature and timing of actions taken by St. Pierre with respect to his debt to American Iron was not consistent with the principles that govern decisions of motions for summary judgment.

■ A motion for summary judgment may not properly be granted unless the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing the record to determine whether there is a genuine issue as to any material fact, the district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Balderman v. United States Veterans Administration, 870 F.2d at 60. In ruling on the motion, the court is not entitled to weigh the evidence. See, e.g., id.; Heyman v. Commerce & Industry Insurance Co., 524 F.2d 1317, 1319–20 (2d Cir.1975). Rather, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See, e.g., Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir.1988).

■ A summary judgment motion may be made with or without supporting affidavits, see Fed.R.Civ.P. 56(a); however, Rule 56 provides that if affidavits are submitted they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein," Fed. R.Civ.P. 56(e). The Rule also provides that

> *[w]hen a motion for summary judgment is made and supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e) (emphasis added). However, if the motion for summary judgment is not made and supported as provided in Rule 56, the Rule does not impose on the party opposing summary judgment an obligation to come forward with affidavits or other admissible evidence of his own. *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In the present case, although the district court discussed these principles, it did not appropriately apply them. First, to the extent that defendants sought summary judgment on the basis that St. Pierre had not previously acknowledged his debt to Kenworth or its parent, their motions were not properly supported as provided by Rule 56(e). Although defendants and Connecticut Indemnity asserted that St. Pierre had not acknowledged his debt to Kenworth prior to the expiration of the prescription period, we have seen in the record no such assertion based on evidence or personal knowledge of the facts. For example, the affidavit of Connecticut Indemnity's Canadian consultant stated his opinion that "[a]s of February 20, 1993 [*i.e.,* five years and a day from the date of the theft], Kenworth had no legal right to claim any money from St. Pierre under the Leasing Contract." (First Borenstein Aff. ¶ 28.) Although this opinion apparently assumes that St. Pierre had not, prior to February 19, 1993, acknowledged his debt to Kenworth, counsel did not make any

such assertion on the basis of his personal knowledge of any facts. He stated only, "I can see absolutely no indication *in St. Pierre's letter of September 6, 1994* . . . that even implies the abandonment of St. Pierre's right to assert prescription" (First Borenstein Aff. ¶ 30 (emphasis added)); he proffered no factual observations as to any prior acknowledgement that might have occurred. If defendants sought summary judgment on the basis that in fact St. Pierre had not, prior to the expiration of the prescription period, acknowledged his debt to Kenworth or its parent, it was incumbent on defendants to adduce admissible evidence to that effect, perhaps by obtaining discovery from St. Pierre in which he so admitted, or by obtaining deposition testimony or affidavits from Kenworth or American Iron. Defendants adduced no such evidence. Thus, although the court described St. Pierre's affidavit, which stated that St. Pierre had made such acknowledgements throughout the period, as "conclusory," we cannot see that Rule 56 imposed on St. Pierre an obligation to come forward with evidence that was more specific, given defendant's failure to support their motions with evidence or factual assertions based on personal knowledge.

Second, the district court failed to resolve all ambiguities and draw all factual inferences in favor of St. Pierre as the party against whom summary judgment was sought, for there is evidence in the record that suggests that St. Pierre may in fact have given pertinent acknowledgements to Kenworth prior to the running of the prescription period. For example, in his affidavit submitted in opposition to summary judgment, St. Pierre stated that "[t]hroughout this unfortunate affair, I have consistently acknowledged my obligations to Kenworth." (St. Pierre Aff. ¶ 34.) By letter dated September 6, 1994 ("September 1994 Letter"), St. Pierre wrote Kenworth stating that he "acknowledge[d] owing" $102,409.23 to Kenworth, and "apologiz[ed] for not having honoured [his] undertakings." Although this letter is dated after the expiration of the pre-

scription period, its reference to prior "undertakings" is compatible with St. Pierre's affidavit assertion that he had "consistently acknowledged" his obligations to Kenworth "[t]hroughout." In addition, American Iron in its complaint in the Quebec action alleged that St. Pierre had "on numerous occasions[ ] acknowledged his liability for the loss of the Kenworth truck and for the amount of . . . $102,409.23[ ], a copy of such acknowledgement being herein produced as Exhibit P–3." (American Iron Declaration dated June 7, 1996, ¶ 6.) While the exhibit referred to was St. Pierre's post-prescription-period September 1994 Letter, that letter plainly constituted only one of the allegedly "numerous" acknowledgements.

We note that although the district court termed St. Pierre's submissions "self-serving," the self-serving nature of a witness's statements goes not to their admissibility but to their weight, *see, e.g., United States v. Lawal,* 736 F.2d 5, 8 (2d Cir.1984). The weighing of St. Pierre's evidence is a matter for the finder of fact at trial; it was not the prerogative of the court on a motion for summary judgment. Further, we have seen no citation, by defendants or by the district court, of Canadian law requiring that, in order to interrupt the prescription period, the debtor's acknowledgement must be in writing. Plainly it would be open to St. Pierre at trial to give chapter and verse of the acknowledgements he has sworn he "consistently" made "[t]hroughout."

In sum, we conclude that the district court, in granting summary judgment, inappropriately weighed the evidence, failed to draw all permissible inferences in favor of St. Pierre as the party opposing summary judgment, and imposed on him a burden to adduce evidence that was not warranted by the speculative affidavits supporting defendants' motions.

Finally, we add a note of caution with respect to the doctrinal basis for the court's ruling that the prescription period

**406**

was not revived. That ruling was based on the finding that St. Pierre, although defaulting in the American Iron action, had not made a post-prescription-period "promise" to pay his debt to Kenworth. So far as we can see, however, neither the parties nor the court have pointed to any provision of Canadian law that forecloses the possibility that a party who defaults in responding to a lawsuit will thereby be considered to have satisfied the renunciation requirement by having made the functional equivalent of an unconditional promise to pay the debt. Indeed, we note that one of the authorities cited by the district court states that "[r]enunciation requires '*a new obligation or* an unequivocal promise to pay the prescribed debt.' *Catellier v. Belanger*, 4 D.L.R. 267, 271 (Sup.Ct. of Can.1924)." *St. Pierre III*, 21 F.Supp.2d at 145 (emphasis ours). Plainly the judgment entered against St. Pierre represents an obligation. If, as defendants contend, the prescription period had expired and extinguished St. Pierre's obligation to pay American Iron, the American Iron judgment would seem to constitute "a new obligation . . . to pay the prescribed debt." *Catellier v. Belanger*, 4 D.L.R. at 271. Thus, even if defendants had come forward with actual evidence that St. Pierre made no explicit promise to pay, it is not at all clear that they were entitled to judgment against him as a matter of law.

CONCLUSION

For the foregoing reasons, we conclude that St. Pierre's claims for indemnity and contribution were improperly dismissed for lack of standing; that proof of the allegations of misfeasance underlying those claims is not foreclosed by either res judicata or collateral estoppel; and as to any of the claims for damages that were dismissed in *St. Pierre I* for lack of standing, the *St. Pierre I* judgment does not bar St. Pierre's assertion of those claims here. We express no view as to the merits of any of St. Pierre's claims. The judgment of the district court is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

Costs to plaintiff.