Richard WILLIAMS and Bryan Williams, Plaintiffs

v.

David ATKINS, Ryan Fortini and the New York State Police, Defendants

No. 00 CIV. 8257(SCR).

United States District Court, S.D. New York.

Aug. 27, 2004.

James Michael Lenihan, Esq., White Plains, NY, for Plaintiffs.

Susan H. Odessky, Assistant Attorney General, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. BACKGROUND:

#### A. Procedural History:

Richard Williams ("RW") and Bryan Williams ("BW") (RW and BW are collectively referred to herein as, the "Plaintiffs") filed this lawsuit against David Atkins, individually and as an employee of the New York State Police ("Trooper Atkins"), Ryan Fortini, individually and as an employee of the New York State Police ("Trooper Fortini"), and the New York State Police ("NYSP"; Trooper Atkins, Trooper Fortini and NYSP are collectively referred to herein as, the "Defendants"). The Defendants have made a motion for summary judgment (the "Defendants' Motion") on three grounds[1]: (1) neither Trooper Atkins nor Trooper Fortini can be held liable for the alleged "stomping" on RW's ankle because neither RW nor BW has identified which Defendant officer was responsible; (2) even assuming that one of the Defendant police officers "stomped" on RW's ankle, the other Defendant police officer did not have a sufficient opportunity to intervene and thus cannot be held liable; and (3) Trooper Atkins and Trooper Fortini are immune from liability for civil damages under the doctrine of qualified immunity. The Plaintiffs responded to the Defendants' Motion ("Plaintiffs' Opposition") and the Defendants replied ("Defendants' Reply").

#### B. Statement of Facts:

Based upon the submitted motions, exhibits, depositions, affidavits and statements of undisputed material facts by the

---

1. The Plaintiffs have other causes of action pending against the Defendants, but this motion for summary judgment is made only with respect to the excessive force "stomping" claim asserted by RW.

Plaintiffs and Defendants, the Court finds that the following facts are not in dispute.

On the afternoon of October 29, 1999, Trooper Atkins was on patrol in Peekskill, New York. He observed that a vehicle being driven by RW had an expired registration. Trooper Atkins stopped the vehicle at the corner of North Division Street and Kossuth Street. When he approached the vehicle, Trooper Atkins noticed that RW had a clear plastic bag with numerous, smaller plastic bags sticking out of his pocket.[2] Trooper Atkins asked to see the bags, RW's license and registration. It is undisputed that RW did not have the registration for the vehicle, which was owned by his girlfriend. The parties dispute whether or not RW had a valid driver's license.[3] RW handed the plastic bags to Trooper Atkins, who returned to his patrol car to run a search on the vehicle and to call for backup. During this time period, Trooper Fortini arrived at the scene in his patrol car. RW drove off and Trooper Atkins and Trooper Fortini pursued in their respective patrol cars. RW drove to the end of Kossuth Street, which is a dead end street, stopped his car and fled on foot towards his residence. Trooper Atkins and Trooper Fortini chased RW on foot.[4] During the chase, BW, who is RW's father and was living in the same building as RW, observed the chase and followed the pursuit.[5] When RW reached the enclosed backyard behind his residence, Trooper Fortini drew his weapon and gave an order to RW.[6] At this point in the parties' respective recollections of the incident, the parties' versions of the facts significantly diverge.

According to the Defendants, the events proceeded as follows. RW was ordered to take his hands out of his pockets, but refused to do so. Trooper Fortini approached with his weapon drawn, holstered his weapon and grabbed RW, pulling him to the ground. RW and Trooper Fortini were wrestling on the ground and Trooper Atkins had his weapon drawn, at which point BW walked towards them. Trooper Atkins sprayed BW in the face with pepper spray, allegedly to prevent him from "jumping on Trooper Fortini". Trooper Fortini and RW continued to wrestle on the ground and Trooper Atkins sprayed RW with the pepper spray, inadvertently spraying Trooper Fortini as well. After he was sprayed, RW stopped resisting and allowed the Defendants to place handcuffs on both wrists. After RW was handcuffed, Trooper Fortini stood up and searched him and then threw up from the effects of the pepper spray.

According to RW, the events proceeded as follows. RW was told to lay on the

2. Trooper Atkins testified at his deposition that the plastic bags were consistent with those used in connection with the sale of narcotics. Also, Trooper Atkins testified that he smelled marijuana when he approached the vehicle that RW was driving when he was pulled over. The Plaintiffs do not dispute that RW was in possession of a quantity of marijuana at the time of this incident.

3. Ultimately, RW was given eight summons by the Defendants, none of which was for unlicensed operation of a vehicle.

4. Trooper Atkins and Trooper Fortini both claim that RW "stumbled" during the chase when going down a set of stairs. RW claims that at no point during the chase did he stumble or fall.

5. The Defendants claim that BW (1) attempted to grab and shove Trooper Fortini, (2) ran at Trooper Fortini with his arms spread, as if to hold or block him, and (3) came into contact with Trooper Atkins and shoved him down a flight of stairs. BW denies ever coming into contact with either officer until such time as he was told to get on the ground, when he was handcuffed.

6. The parties dispute what this order was and whether or not the order was obeyed by RW.

ground by Trooper Fortini. RW admits that he initially did not comply with Trooper Fortini's order, but that after being told a second time he laid face down on the ground at which time one of the Defendant police officers put a knee in his back and handcuffed him. He denies "wrestling" with Trooper Fortini and states that at no time did either Defendant police officer have to struggle with him in order to handcuff him. RW claims that when he was sprayed with the pepper spray he reacted by trying to bring his cuffed hands to his eyes, at which time he felt a sharp pain to his left ankle. RW alleges that it felt like someone "stomped" on his foot. Due to impaired vision as a result of the pepper spray, RW could not see clearly and was unable, at the time, to identify with certainty which Defendant police officer did the "stomping." RW claims to have suffered a fractured ankle and tibia and has undergone two surgeries in connection with those injuries, which surgeries inserted screws and plates into the ankle, which he alleges caused him to be bedridden for six or seven months.

According to BW, the events proceeded as follows. BW alleges that RW voluntarily laid on the ground when ordered to do so by the Defendants. BW claims that he was trying to tell the Defendants that RW lived in the house when he was sprayed in the face with pepper spray. According to BW, the officer who sprayed him proceeded to spray RW in the face as well. BW claims that he heard RW "cry out," but was unable to see exactly what happened to RW because of the pepper spray in his eyes.

## II. *STANDARD OF REVIEW:*

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" Fed.R.Civ.P. 56(c).

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden falls on the moving party who is required to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party responding to a motion for summary judgment that is supported by affidavits must present specific evidence in support of the contention that there is a genuine dispute as to a material fact in the case. *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000).

 Conclusory statements, mere conjecture, hearsay or speculation by the party resisting summary judgment cannot defeat the motion. *Bickerstaff v. Vassar College,* 196 F.3d 435, 452 (2d Cir.1999). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts ... The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial." Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (emphasis in original), quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). While it is true that a court is generally required to draw all reasonable inferences and resolve all ambiguities in favor of the party opposing summary judgment. *See Matsushita Elec. Indus. Co.* at 586, 106 S.Ct. 1348, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *ANALYSIS:*

As set forth above, the defendant has made a motion for summary judgment on three separate grounds; this Court addresses each of those grounds individually.

**A.** NEITHER TROOPER ATKINS NOR TROOPER FORTINI CAN BE HELD LIABLE FOR THE ALLEGED "STOMPING" ON RW'S ANKLE BECAUSE NEITHER RW NOR BW HAS IDENTIFIED WHICH DEFENDANT POLICE OFFICER WAS RESPONSIBLE:

■ The Defendants' first argument is that neither Trooper Atkins nor Trooper Fortini can be held liable for the alleged "stomping," even if it did occur, because neither of the Plaintiffs can conclusively identify which of the two officers "stomped." The Defendants contend that the Court should "reject as contradictory and incredible the testimony of Bryan Williams, Richard Williams' [sic] father, regarding which officer is allegedly responsible for using excessive force against Richard Williams." (Defendants' Motion, Page 8). The Defendants do not cite any case law in support of the proposition that if a victim cannot conclusively identify which of two individuals, both of who were present during the incident, inflicted the injury that both Defendants are entitled to summary judgment.

Essentially, the Defendants' theory for summary judgment on this matter is that because neither Plaintiff can identify for certain whether it was Trooper Atkins or Trooper Fortini, who did the alleged "stomping", that both Defendants are entitled to summary judgment. While the Defendants do not dispute that pepper spray was sprayed into the face of each of the Plaintiffs, the Defendants fail to acknowledge that impaired vision resulting from the pepper spray and the fact that RW was made to lie face down on the ground are likely the reasons that "Richard Williams, like Bryan Williams, does not definitively identify either defendant Trooper Atkins or Trooper Fortini as being the officer who allegedly stomped on his ankle." (Defendants' Motion, Page 10). The Plaintiffs acknowledge that neither RW nor BW directly observed the "stomp"; conceivably because they had been sprayed in the face with pepper spray and either were, or were in the process of, being handcuffed while lying face down on the ground.[7]

This Court finds the Defendants' argument on this issue unpersuasive. It is unfair to say that because a plaintiff, who was handcuffed, pinned face down and sprayed in the face with pepper spray, cannot identify which of two officers struck him, therefore the defendants should be granted summary judgment. The critical determination to be made between the Plaintiffs and Defendants is whether the "stomping" actually occurred. With respect to this issue, there are certainly genuine issues as to the material facts, which cannot be resolved as a matter of law. If it is determined that a "stomping" did occur, then two inquiries should be made between the two Defendants, (1) which Defendant police officer "stomped" on RW's ankle and (2) as set forth more fully below, did the "non-stomping" Defendant police officer have a "realistic opportunity"

---

7. It should be noted, that although neither Plaintiff directly observed the alleged "stomp", the Plaintiffs have advanced a theory on which officer "stomped" on RW's ankle based upon facts ascertained after the date of the incident.

to intervene and prevent the "stomp." Accordingly, this Court cannot rule as a matter of law and the Defendants' motion for summary judgment on such ground is denied.

**B.** EVEN ASSUMING THAT ONE OF THE DEFENDANTS "STOMPED" ON RW'S ANKLE, THE OTHER DEFENDANT DID NOT HAVE SUFFICIENT OPPORTUNITY TO INTERVENE AND THUS CANNOT BE HELD LIABLE:

█ The Defendants' second argument is that even if one of the Defendants "stomped" on RW's ankle, the other "non-stomping" officer was not in position and did not have an opportunity to intervene and cannot be held liable. The Second Circuit addressed the issue of intervention in *Anderson v. Branen*, 17 F.3d 552 (2d Cir.1994), stating that "all law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Branen* at 557. The obligation to intervene only attaches when the officer in question has a "realistic opportunity" to intervene to prevent the harm from occurring, which determination is "an issue of fact for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* at 557.

█ The Defendants contend that because the whole incident was "fast-moving" and that "it is highly unlikely that had either defendant decided to suddenly stomp on Richard Williams' [sic] foot, the other officer would have had any time to stop that action." (Defendants' Motion, Page 12). This argument very well might be true. However, there is not sufficient evidence in support of the argument that "a reasonable jury could not possibly conclude otherwise." There are genuine issues of material fact regarding, among other things, whether: (1) either officer

"stomped" on RW's ankle; (2) if a "stomping" did occur, which Defendant police officer did the "stomping"?; (3) if a "stomping" did occur, was the "stomping" intentional or inadvertent?; and (4) if a "stomping" did occur, could it have been prevented by intervention by the other officer? Therefore, this Court cannot rule as a matter of law and the Defendants' motion for summary judgment on such ground is denied.

**C.** THE DEFENDANTS ARE IMMUNE FROM LIABILITY FOR CIVIL DAMAGES UNDER THE DOCTRINE OF QUALIFIED IMMUNITY

█ The third argument advanced by the Defendants is that even if the Plaintiffs have sufficiently alleged a constitutional violation, the Defendant police officers are entitled to qualified immunity. If a plaintiff has stated a viable constitutional claim, a government defendant is still entitled to immunity for damages under the doctrine of qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Defendants concede that government officials are not entitled to a defense of qualified immunity for claims arising from the performance of discretionary functions if the alleged conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Defendants further assert that courts have only held public officials liable if "a reasonable official would understand that what he is doing violates that right." *See Anderson* at 640, 107 S.Ct. 3034.

█ The Defendants conclude that "the testimony of both plaintiffs does not identify which officer was responsible for the alleged act of stomping on Richard Williams' [sic] ankle. Further, the testimony does not indicate that either officer

is liable for failing to intercede to stop the alleged use of excessive force by their fellow officer. Under these circumstances, it cannot be said that either officer was aware that his actions violated Richard Williams' [sic] constitutional rights." (Defendants' Motion, Page 14). Whether or not either officer "stomped" on RW's ankle is a question of fact that is highly relevant on the issue of qualified immunity. This Court makes no judgment as to whether this alleged "stomping" occurred because, as set forth in greater detail above, that is a genuine issue of material fact to be determined by a jury. The resolution of this question of material fact—did a stomping occur and if so under what circumstances—must be made before a determination can be made that either or both Defendants are entitled to qualified immunity. If a jury finds that an intentional "stomping" did occur, that conduct would violate RW's "clearly established statutory or constitutional rights of which a reasonable person would have known." It would be reasonable for an official to understand that he was violating a suspect's rights when "stomping" his ankle, while the suspect is prone on the ground in handcuffs. Accordingly, the Defendants' argument with respect to qualified immunity fails and the motion for summary judgment on such grounds is denied.

## IV. CONCLUSION:

The Defendants' Motion for Summary Judgment is denied with respect to all three arguments advanced by the Defendants.

It is so ordered.